DOROTHY H. HERBERT, on Behalf of BARBARA G. HERBERT and Another, Petitioner, *v.* ALAN HERBERT, Respondent.

Domestic Relations Court of the City of New York, Family Court, New York County, August 1, 1950.

*Aaron Lipper* for petitioner.

*Barnett J. Nova* for respondent.

I. MONTEFIORE LEVY, J. The parties were duly married September 2, 1931, in Harrison, New York. They have two daughters one under, the other over seventeen. The wife obtained a divorce in Miami, Florida, on January 20, 1939, which gave her custody of the children. Each of the parties has remarried again. The mother prays that the father make an adequate allowance for the children's support sufficient to include a college education.

Under subdivision (4) of section 92 of the Domestic Relations Court Act of the City of New York the court is authorized to make provision for a child beyond seventeen years of age " where there are * * * exceptional circumstances that warrant it, in the discretion of the court * * *."

Is a college education " exceptional circumstances " for these two children?

With one class of youngsters a college education may be a waste, to others a valuable asset.

There is no cited decision in the Domestic Relations Court shedding light as to whether a college education is " exceptional circumstances " within the purview of the statute. The court, therefore, treats this case *de novo*.

How will a college education benefit these children?

One must consider the actual people involved: the elements that make up their rearing, their breeding, their personality, their aptitudes, their ambitions, their environment.

The children are attractive, well-bred girls in good health. Each has graduated with distinction from high school. Each is anxious to attend college.

Let us consider the family environment. The mother is a lady of superior breeding, intelligence and education. She comes of a distinguished family, where a college education for children would be given as a matter of course.

The father is a gentleman highly regarded. He has a large income. He has traveled extensively and lives in an expensive environment. His rent, for instance, is over $4,000 a year. He, too, should consider a college education as something to be granted to children, where the capacity exists, as a matter of course.

Children of broken homes are entitled, from their parents, to even greater consideration than children, fortunately, in happy homes.

Tragically, the advance we have made these many years toward peace, tolerance and understanding, has had a curt cessation and we are now living in a period where force is ruling. The ill-advised agitators who started governing with force will ultimately die by that force which they have pulsated. But in the meantime we live in a sorry world where a college career loses much of its value; still we must not abandon our effort for a finer race of men and women. We must not merely help the normal, the thoroughbred, too, must be encouraged. Our standards must be preserved and improved if our people are to attain a better life.

A college education is not a guarantee for successful achievement. Far from it.

Nevertheless, it would greatly enhance the usefulness of these two young ladies to the community, to themselves and to any family that they in turn may be called upon to rear. It is well known there are many avenues and careers in life open only to people with a college degree. It is true that in many cases people with natural intelligence, experience and ability may fill

such positions even better than college graduates, but the fact remains that the occupations girls of this character and type would probably enter, such as social work, teaching or other professions are open only to persons with college degrees. The necessity for earning a living becomes of great importance even to the wealthiest in this ever-changing world.

In view of the exceptional circumstances existing in this case this court, therefore, finds a college education a necessity.

The mother has estimated it will cost nigh $10,000 annually to maintain and educate these girls in her custody as befits their station in life. That figure appears high; $7,500 would not seem too much. The means of the respondent must, however, be considered. The court, in view of the facts, directs respondent to pay to the petitioner for and on behalf of these two children the sum of $4,850 annually to be paid in equal monthly installments, the first payment to be made on September 1, 1950. This amount may be directed under the 1949 amendment (L. 1949, ch. 266) to section 92 of the Domestic Relations Court Act of the City of New York which removed the previous limitation from $50: " (3) * * * Such limitation shall not, however, apply to a petitioning wife who is pregnant or the mother of a child or children in her custody."

In passing may it be said, if the court's jurisdiction was limited to only the younger child the additional drain on the mother's resources in maintaining the older child would be considered an element in increasing the amount of the father's support of the younger child.

The parties have stated in open court and by correspondence that they would abide by the decision of this court for the amount it may authorize and the order, therefore, is entered as upon consent of both sides.